IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

BRIAN MUNIZ,                                              )
                                                         )
                              Plaintiff,                 )
                                                         )  CIVIL ACTION
vs.                                                      )
                                                         )  Case No. 1:26-CV-07823
MPC COMPANY, L.L.C.,                                     )
                                                         )
                              Defendant.                 )

## COMPLAINT

COMES NOW, BRIAN MUNIZ, by and through the undersigned counsel, and files this, his Complaint against Defendant, MPC COMPANY, L.L.C., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, BRIAN MUNIZ (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Harvard, Illinois (McHenry County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

1

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, MPC COMPANY, L.L.C. (hereinafter "MPC COMPANY, L.L.C."), is a foreign limited liability company that transacts business in the State of Illinois and within this judicial district.

8.      Defendant, MPC COMPANY, L.L.C., may be properly served with process for service via its Registered Agent, to wit: c/o Lisa Digiacomo, Registered Agent, 11887 US Highway 20, Garden Prairie, IL 61038.

**FACTUAL ALLEGATIONS**

9.      On or about April 30, 2026, Plaintiff was a customer at "Jelly Café" a business located at 1710 Golf Rd, Mount Prospect, IL, 60056 referenced herein as "Jelly Café". Attached is a receipt documenting Plaintiff's purchase. See Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. See Exhibit 2.

10.     After his April 30, 2026, visit to Jelly Café as a customer, Plaintiff again attempted to visit Jelly Café, but after arriving he was deterred from leaving his vehicle due to the barriers to

2

access identified in this Complaint.

11.     Plaintiff is an Uber Driver and is commonly driving around the entire Chicago area. Although Plaintiff resides in McHenry County, Plaintiff is often picking up and dropping off passengers around O'Hare International Airport and throughout all Chicago.

12.     Defendant, MPC COMPANY, L.L.C., is the owner or co-owner of the real property and improvements that Jelly Café is situated upon and is the subject of this action.

13.     Plaintiff's access to the business(es) located 1710 Golf Rd, Mount Prospect, IL 60056, Cook County Property Appraiser's property pin number: 08152010130000 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, MPC COMPANY, L.L.C., is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14.     Plaintiff has visited the Property twice before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property definitely within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer of Jelly Café, to be a new customer of Arzu Restaurant (also in the Property) to determine if and when the Property is made accessible and for Advocacy Purposes.

15.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer routinely working and driving in near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing

barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until after the barriers to access are removed.

16.     Plaintiff travelled to the Property twice before as a customer and as an independent advocate for the disabled, personally encountered the barriers to access the Property that are detailed in this Complaint, engaged these barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

17.     Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

18.     Plaintiff's inability to fully access the public accommodation within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an inquiry in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

19.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

4

20. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24.     The Property is a public accommodation and service establishment.

25.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

26.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

27.     The Property must be, but is not, in compliance with the ADA and ADAAG.

28.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29.     Plaintiff intends to visit the Property in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities,

6

privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30. Defendant, MPC COMPANY, L.L.C., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31. Defendant, MPC COMPANY, L.L.C., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, MPC COMPANY, L.L.C., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS**

    (i)    In front of Jelly Cafe, the two accessible parking spaces and the two associated access aisles have running slopes in excess of 1:48 in

violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(ii)     In front of Jelly Cafe, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the two accessible spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from these accessible parking spaces to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip.  At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(iii)    In front of Jelly Cafe, the accessible route goes into the vehicular way and these surfaces of the accessible route have a cross-slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff. Moreover, this barrier would force Plaintiff to confront additional dangers causing increased

8

anxiety and trepidation.

(iv) In front of Jelly Cafe, the accessible ramp has a vertical rise at the base that is approximately ½ an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

(v) In front of Jelly Cafe, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:10 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(vi) At the entrance to Jelly Café, there is a doorway threshold with a vertical rise of approximately an inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff

9

to tip over when attempting to enter. Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

(vii)　　At the entrance to Jelly Café, the door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall or protruding object in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door. The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

(viii)　　At the entrance to Jelly Café, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by

10

the inappropriately higher slope.

(ix)   Not all entrance doors and doorways comply with Section 404 of the 2010 ADAAG standards, this is a violation of Section 206.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the interior of the Property.

(x)   In front of Jelly Cafe, leading from the accessible route after the accessible ramp, there is an opening in the ground surfaces with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

(xi)   Nearest Unit 1778, due to the placement of a bike rack in the accessible route, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

(xii)   Nearest Unit 1778, due to the placement of a bike rack in the accessible route, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public

features of the Property.

(xiii) Across the vehicular way from Unit 1746, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xiv) Across the vehicular way from Unit 1746, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of one of the accessible spaces, and the associated access aisle, have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from the accessible parking space to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip. At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(xv) Across the vehicular way from Unit 1746, the access aisle servicing one of the two accessible parking spaces has indentations which promote puddling, which represents a slipping hazard and is in violation of Section 302.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xvi)    Across the vehicular way from Unit 1746, the access aisle servicing one of the two accessible parking spaces has indentations which promote puddling. As a result, the access aisle adjacent to the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(xvii)    Across the vehicular way from Unit 1746, the two accessible parking spaces are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(xviii)    Across the vehicular way from Unit 1736 and 1738, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xix) Across the vehicular way from Unit 1736 and 1738, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces the two accessible parking spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from the accessible parking space to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip. At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(xx) Across the vehicular way from Unit 1736 and 1738, the two accessible parking spaces have indentations which promote puddling, which represents a slipping hazard and is in violation of Section 302.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxi) Directly across the vehicular way from Unit 1736, the accessible parking space is not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the

14

likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(xxii)   Nearest Unit 1742, due to a policy of placing planters and pots in close proximity to the accessible ramp, the landing at the top of the curb accessible ramp does not have 36 (thirty-six) inch clear space in violation of Section 406.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the Property because the lack of a level landing would either completely prevent access or, at a minimum, cause Plaintiff to have to turn on sloped surface exposing her to dangerous cross-slopes risking tipping over.

(xxiii)  Across the vehicular way from Unit 1732, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xxiv)   Across the vehicular way from Unit 1732, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces the two accessible parking spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it

15

dangerous and difficult for Plaintiff to safely traverse from the accessible parking space to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip. At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(xxv)   Across the vehicular way from Unit 1732, the two accessible parking spaces have indentations which promote puddling, which represents a slipping hazard and is in violation of Section 302.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxvi)   Across the vehicular way from Unit 1734, the accessible parking space is not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(xxvii)   Across the vehicular way from Unit 1734, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces

16

or otherwise fail to comply with Sections 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxviii) Nearest Unit 1730, due to the presence of tables and chairs, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

(xxix) Nearest Unit 1730, due to the presence of tables and chairs, the Property lacks an accessible route connecting accessible facilities, accessible elements (including the nearby accessible ramp) and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

(xxx) Across the vehicular way from Unit 1710, due to the proximity of the accessible ramp to the entrance of Unit 1710, the accessible ramp servicing the Property lacks clear and level landing at the top of the accessible ramp, in violation of Section 405.7 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxxi)    Across the vehicular way from Unit 1710, due to the proximity of the accessible ramp to the entrance of Unit 1710, the accessible ramp servicing the Property has a cross-slope steeper than 1:48 in violation of Section 405.3 of the 2010 ADAAG standards. This barrier to access exposes Plaintiff to increased danger of tipping over as a cross-slope in excess of 1:48 is dangerous, and this excessive cross-slope is made even more dangerous given the fact it is on a sloped surface of a ramp.

(xxxii)    Across the vehicular way from Unit 1710, the surfaces of the accessible route lacks a level turning space of at least a 60 inches in diameter circle or a 60-inch square minimum t-shaped space in violation of Section 304.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because if Plaintiff is forced to turn on a sloped surface this can cause the wheelchair to tip over and cause injury.

(xxxiii)    On the east side of Fresenius Kidney Care, two of the access aisles servicing the accessible parking spaces are not level due to the presence of an accessible ramp in the access aisles in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface. Thus, causing a large vertical drop from the edge of her van lift to the floor, causing Plaintiff to fall and injure themselves.

(xxxiv)     On the east side of Fresenius Kidney Care, the accessible curb ramps are improperly protruding into two of the access aisles of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface. Thus, causing a large vertical drop from the edge of her van lift to the floor, causing Plaintiff to fall and injure themselves.

(xxxv)     On the east side of Fresenius Kidney Care, the bottom edges of the signs identifying the three accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xxxvi)     On the east side of Fresenius Kidney Care, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the three accessible spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from these accessible parking spaces to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip. At a minimum, this danger causes Plaintiff anxiety just for using this

accessible parking space.

(xxxvii)    On the east side of Fresenius Kidney Care, due to a failure to enact a policy of proper parking lot maintenance policy, there is a pothole in one of the access aisles. As a result, the access aisle has an opening with a width in excess of ½ inch in violation of Sections 302.3 and 502.4 of the 2010 ADAAG standards.  This barrier to access could cause the wheel of Plaintiff's wheelchair to get lodged in the opening causing difficulty and risk having the wheelchair tip over in a struggle to get removed from the gap.

(xxxviii)   There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

(xxxix)    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**JELLY CAFÉ RESTROOMS**

(xl)    The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is missing. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

20

(xli)    Due to the placement of a paper towel dispenser within 12" above where the rear grab bar should be, there is inadequate space between the grab bar and objects placed above the grab bar in violation of Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to safely transfer from the wheelchair to the toilet and back.

(xlii)    Restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front. In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

(xliii)    The toilet paper dispenser serving the accessible toilet is not positioned seven to nine inches in front of the toilet and therefore is in violation of Section 604.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize the toilet due to the fact the toilet paper dispenser is at an improper distance from the toilet, given Plaintiff's disability, Plaintiff would not be able to get up and reach the toilet paper.

(xliv) The accessible restroom signage is not located on the latch side of the door and is in violation of Section 703.4.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

33. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35. The Property was built in 1993 and after 2018, underwent significant modifications to the parking lot, including a full re-paving. As such, the proper standard by which to adjudicate the proper and lawful removal of the barriers to access identified in this Complaint is the 2010 ADAAG Standards, and not the readily achievable standard.

36. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

37. All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA as the modifications necessary to cure the barriers to access identified in paragraph 32 of this Complaint are listed in 28 C.F.R. § 36.304 as "readily achievable".

38. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

39. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, MPC COMPANY, L.L.C., has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $7,311,000.00

40. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

41. Upon information and good faith belief, the Property has been altered since 2010.

42. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, MPC COMPANY, L.L.C., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

44. Plaintiff's requested relief serves the public interest.

45. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, MPC COMPANY, L.L.C.

46. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, MPC COMPANY, L.L.C., pursuant to 42 U.S.C. §§ 12188 and 12205.

47. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, MPC COMPANY, L.L.C., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, MPC COMPANY, L.L.C., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, MPC COMPANY, L.L.C., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, MPC COMPANY, L.L.C., to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: July 4, 2026          Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

24